IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLAISE TOBIA, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BALLY TOTAL FITNESS HOLDING | : | |
| CORPORATION, ET AL. | : | NO.   12-1198 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                              February 21, 2013

Plaintiffs have filed a Motion for Reconsideration and/or Relief from our November 20, 2012 Order, which granted Defendants' Motions to Dismiss Plaintiffs' Complaint as unopposed pursuant to Local Rule of Civil Procedure 7.1(c). For the following reasons, we deny that Motion.

**I.      BACKGROUND**

Plaintiffs commenced this action on March 8, 2012, with the filing of a putative class action Complaint. The Complaint alleges that Plaintiffs entered into lifetime membership agreements with Defendant Bally Total Fitness Holding Corporation ("Bally"), which allowed the Plaintiffs to use any and all Bally health clubs throughout the country for the duration of their lives. According to the Complaint, Bally sold over 170 health clubs to Defendant LA Fitness International, LLC (collectively, with Defendant Fitness International, LLC, "LA Fitness") on November 30, 2011, and, after the acquisition, Defendants refused to honor the lifetime contracts or unilaterally modified those contracts without Plaintiffs' consent.

The proceedings that led up to our entry of the November 20, 2012 dismissal order occurred as follows. On May 7, 2012, LA Fitness filed a Motion for Extension of Time, seeking an additional thirty days to answer or otherwise respond to Plaintiffs' Complaint. (Docket No. 7.) LA Fitness stated in the Motion that it had reached out to Plaintiffs' counsel by email and phone on

May 1 and May 6, seeking his agreement to the extension, but Plaintiffs' counsel had not responded. (Id. ¶ 7.) We granted the Motion for Extension of Time on May 8, 2012. On May 17, 2012, LA Fitness filed a Motion for Entry of Protective Order, in which it stated that it intended to file a Motion to Dismiss Plaintiffs' Complaint and wanted to attach to that motion, under seal, the Asset Purchase Agreement between Bally and LA Fitness. (Docket No. 10, at ¶ 2.) LA Fitness stated in its Motion that it had sent an email to Plaintiffs' counsel on May 9, 2012, asking if counsel would agree to enter into a protective order, but had received no response. (Id. ¶ 4.) Four days later, on May 21, 2012, we stayed this action pending a decision by the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") as to whether to transfer the case to the Northern District of Illinois for consolidation with two other pre-existing putative class actions that raised similar claims.[1] Thereafter, on June 20, 2012, having received no response from Plaintiffs to LA Fitness's Motion for a Protective Order, we granted that Motion and signed the requested protective order.

On August 6, 2012, the MDL Panel denied the Motion to Transfer and Consolidate.[2] One

---

[1] At the time that Plaintiffs filed their Complaint, two other federal putative class actions on behalf of the overlapping classes of individuals had already been filed, one on January 12, 2012, in the United States District Court for the Northern District of Illinois, and one on February 1, 2012, in the United States District Court for the Central District of California. See Grabianski v. Bally Total Fitness Corp., No. 1:12-cv-284 (N.D. Ill.); Fridman v. Bally Total Fitness Holding Corp., No. 2:12-cv-0707 (C.D. Calif.). As a result, on April 10, 2012, counsel in the two preexisting cases, i.e., Grabianski and Fridman, filed a Motion for Transfer and Consolidation or Coordination of all three actions with the MDL Panel, requesting transfer to the Northern District of Illinois, pursuant to 28 U.S.C. § 1407.

[2] The MDL Panel stated in its Order that "[a]lthough the three actions share some factual issues regarding whether Bally lifetime membership agreements were breached by defendants . . ., we are unconvinced . . . that those issues are sufficiently complex or numerous to warrant the creation of an MDL." Aug. 6, 2012 Ord., In re: Bally Total Fitness Holding Corp. Lifetime Membership Agreement Contract Litig. ("In re Bally"), MDL No. 2369. We note that Plaintiffs'

month later, on September 6, 2012, we issued an order returning the case to the active docket. The next day, we sent a notice to the parties, scheduling a preliminary pretrial conference for October 10, 2012.  Prior to the conference, on October 1, 2012, Bally filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The next day, we issued a Notice stating that "the preliminary pretrial conference set for October 10, 2012 is CANCELLED pending the Court's decision on Defendant's Motion to Dismiss."  (Docket No. 24.)  On October 5, 2012, LA Fitness filed its own Motion to Dismiss the Complaint, along with a Motion for Leave to File the Asset Purchase Agreement under Seal.  We granted the latter Motion and specifically referenced LA Fitness's Motion to Dismiss in our order.  (Docket No. 33 (stating that "the November 2011 Asset Purchase Agreement attached as Exhibit A to LA Fitness' Memorandum in Support of Motion to Dismiss shall be filed under seal").)

On November 20, 2012, 50 days after the filing of Bally's Motion to Dismiss, and 46 days after the filing of LA Fitness's Motion to Dismiss, having received no responses or other communication from Plaintiffs, we granted both Motions as unopposed pursuant to Eastern District of Pennsylvania Local Civil Rule 7.1(c).  See E.D. Pa. R. Civ. P. 7.1(c) ("In the absence of timely response, [a] motion may be granted as uncontested . . . .")   At the time, the last entry on the docket that reflected any activity by Plaintiffs' counsel was Plaintiffs' filing of two praecipes to issue alias summons four months before, on July 18, 2012.  (Docket Nos. 13 and 14.)   It therefore

---

counsel entered his appearance in the multidistrict litigation, and he claims that he "appear[ed] at the MDL arguments" (Pls. Mem. in Supp. of Reconsid. Mot. at 7 n.2), but it appears that Plaintiffs did not otherwise actively participate in those proceedings.  See In re Bally, Docket No. 13, Pls. Reply Mem. in Supp. of Mot. for Transfer at 2 n.3 ("The plaintiffs in the Tobia action did not file a response to Plaintiffs' MDL motion, and thus, acquiesce to transfer and consolidation." (citing Rules of Procedure of the United States of the Judicial Panel on Multidistrict Litigation, 6.1(c) ("Failure to respond to a motion shall be treated as that party's acquiescence to it."))).

appeared that Plaintiffs no longer wished to pursue their claims in this forum and did not, in fact, oppose the Motions to Dismiss.

However, on December 3, 2012, Plaintiffs filed their "Motion for Reconsideration and/or Relief from our November 20, 2012 Order," seeking to reinstate Plaintiffs' Complaint, as well as leave to file an attached Memorandum of Law in Opposition to the two Motions to Dismiss *nunc pro tunc*. In support of their Motion, Plaintiffs rely on Federal Rules of Civil Procedure 59, 60(b)(1), and 60(b)(6). Defendants oppose Plaintiffs' Motion.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e). Generally, the purpose of a motion for reconsideration brought under this rule is "to correct a clear error of law or to prevent a manifest injustice." United States v. Dupree, 617 F.3d 724, 732 (3d Cir. 2010) (citations omitted). A Rule 59(e) motion for reconsideration will only be granted if the moving party establishes: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citation omitted).

Federal Rule of Civil Procedure 60(b) also provides an avenue for relief from a final judgment, order or proceeding. See Fed. R. Civ. P. 60(b). It sets forth six grounds for relief, and seeks "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir. 1978) (citation omitted). Among the potential grounds for relief are "mistake, inadvertence, surprise, or excusable neglect," and a catchall of "any other reason that

justifies relief." Fed. R. Civ. P. 60(b)(1), (6). "Relief under Fed. R. Civ. P. 60(b)(1) is equitable" and, thus, requires the court "to weigh the totality of the circumstances." Anthony v. Small Tube Mfg. Corp., 484 F. App'x 704, 709 (3d Cir. 2012) (citing Nara v. Frank, 488 F.3d 187, 193-94 (3d Cir. 2007)).

## III. DISCUSSION

### A. Federal Rule of Civil Procedure 59

Plaintiffs first argue that we should grant them relief from our November 20, 2012 Order pursuant to Federal Rule of Civil Procedure 59.[3] As noted above, we will only grant a Rule 59(e) motion for reconsideration if the moving party establishes: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d at 669. "A motion for reconsideration is *not* an opportunity for a party to re-litigate already decided issues or to present previously available evidence." Broadcast Music, Inc. v. La Trattoria East, Inc., Civ. A. No. 95-1784, 1995 WL 552881, at *1 (E.D. Pa. Sept. 15, 1995) (quotation omitted).

In proceeding under Rule 59, Plaintiffs do not argue that we misapprehended the facts or misapplied the law in granting Defendants' Motions to Dismiss on procedural grounds. Rather, they argue only that permitting the dismissal order to stand would result in manifest injustice, because the Complaint asserts viable causes of action. However, "Rule 59(e) . . . 'may not be used . . . to raise arguments . . . that could have been raised prior to the entry of judgment.'" Exxon

---

[3] Plaintiffs rely primarily on Rule 59(a)(2), which concerns motions to open judgment after a nonjury trial. Fed. R. Civ. P. 59(a)(2) (addressing "Further Action After a Nonjury Trial.") As this subsection of Rule 59 is plainly inapplicable here, we do not address Plaintiffs' arguments with respect to that subsection any further, and only address Plaintiffs' secondary arguments under Rule 59(e).

5

Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) (quoting 11 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995) (footnotes omitted)). Moreover, there is simply no manifest injustice in our valid enforcement of our local rules. Indeed, the Court of Appeals for the Third Circuit has made clear that we do not abuse our discretion when we "impose a harsh result . . . when a litigant fails to strictly comply with the terms of a local rule." United States v. Eleven Vehicles, Their Equipment & Accessories, 200 F.3d 203, 214 (3d Cir. 2000) (citation omitted). We therefore conclude that Plaintiffs have not established an entitlement to reconsideration of our November 20, 2012 Order under the standards applicable to Fed .R. Civ. P. 59.

### B. Federal Rule of Civil Procedure 60(b)

Plaintiffs argue that we should grant them relief from our November 20, 2012 dismissal order pursuant to Federal Rule of Civil Procedure 60(b), because counsel's failure to respond to Defendants' Motions was due to inadvertence and excusable neglect, see Fed R. Civ. P. 60(b)(1), or, in the alternative, because other reasons justify relief, see Fed. R. Civ. P. 60(b)(6). Plaintiffs' counsel has submitted an affidavit in support of the Motion for Reconsideration, in which he sets forth the reasons that he did not respond to Defendants' Motions in a timely manner.

The affidavit recounts the following. Plaintiffs' counsel was overseas "[d]uring the first week of October," attending an International Bar Association conference.[4] (Guralnick Aff. ¶ 5.) At some point prior to this time, counsel's office had relocated from Marlton to Vorhees, New

---

[4] The affidavit does not state the exact date on which counsel left for his European travels, although he elsewhere states that he "left town in early October." (Id. ¶ 8.)

Jersey and had lost several associates.[5]  (Guralnick Aff. ¶ 10.)  As a result, counsel was effectively functioning as a solo practitioner.  (Id.)  While in Europe, counsel left in charge of reviewing his emails a new paralegal, whom he had hired the month before, and he did not arrange for an "on-site attorney" to supervise her.  (Id. ¶¶ 5, 10.)  On October 5, 2012, Plaintiffs' counsel flew directly from Europe to Nevada for a jury trial.  (Id. ¶ 6.)  The Nevada case was settled "soon thereafter" and counsel returned to his office in New Jersey on October 14, 2012. (Id.)

Counsel states that, during the two week period in which he was gone, he remained in "daily contact" with his paralegal, but she at no time informed him that Bally and LA Fitness had filed Motions to Dismiss on October 1 and 5, respectively (id. ¶¶ 6, 7), or, apparently, that we had issued an Order cancelling the October 10, 2012 preliminary pretrial conference "pending [our] decision on Defendant's Motion to Dismiss," as well as an Order permitting LA Fitness to file an exhibit to its Motion to Dismiss under seal.  (Docket Nos. 24 and 33.)  Plaintiffs' counsel does not claim that he did not receive copies of those ECF filings via email, but rather states that, unbeknownst to him, his paralegal was not familiar with the federal electronic case filing system and disregarded the emails containing the above filings, believing them to be spam.  (Guralnick Aff. ¶ 7.)  According to counsel, he did not learn that Bally and LA Fitness had filed motions until several weeks later, at "the beginning of the Thanksgiving holiday," when he was "scrutinizing office emails" and discovered the November 20, 2012 dismissal order.[6]  (Id. ¶ 9.)  He filed his

---

[5] Notably, in spite of counsel's representation in the affidavit that his office relocated to Vorhees prior to his October travels, counsel did not advise the Court of any change of address until December 3, 2012, when he filed a change of address notice.  (See Docket No. 39.)

[6] In 2012, Thanksgiving fell on Thursday, November 22.

Motion for Reconsideration on December 3, 2012.

### 1.     Rule 60(b)(1)

In determining whether a party has engaged in excusable neglect that warrants relief under Rule 60(b)(1),

> a court must take into account all relevant circumstances, including (1) the danger of prejudice to the adverse party; (2) the length of any delay caused by the neglect and its effect on the proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the moving party; and (4) whether the moving party acted in good faith.

Tuskegee N. Advocacy Grp. v. Ctrs. for Disease Control & Prevention, Civ. A. No. 09-5011, 2010 WL 1558715, at *2 (E.D. Pa. Apr. 19, 2010) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

Under the circumstances presented, we find that Plaintiffs' actions were inexcusably neglectful and not inadvertent. We focus first on "the reason for the delay," and conclude that the delay at issue was in the reasonable control of the moving party and that counsel completely "fail[ed] to provide for . . . readily foreseeable consequence[s]." Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 328 (3d Cir. 2012) (alterations in original) (quoting Consolidated Freightways Corp. of Del. v. Larson, 827 F.2d 916 (1987)). Plaintiffs' counsel acknowledges that he knew, when he left for Europe in early October, that this case had been restored to the active docket on September 6, 2012. (See Guralnick Aff. ¶ 8). He was also in possession of an August 6, 2012 email from Bally's counsel, which memorialized an agreement that Bally would file a responsive pleading to Plaintiffs' Complaint within 21 days of the restoration of the case to the active docket. (Ex. A to Coady Decl.) Moreover, counsel for both LA Fitness and Bally, Paul J. Coady and Henry Pietrkowski, have submitted affidavits in which they state that they and

8

Plaintiffs' counsel had a phone conference on September 25, 2012, in anticipation of the court's upcoming preliminary pretrial conference, and both Bally's and LA Fitness's counsel specifically advised Plaintiffs' counsel in that call that they would soon be filing Motions to Dismiss.[7] (Pietrkowski Aff. ¶ 7; Coady Decl. ¶ 5.)  Three days later, Bally's counsel sent Plaintiffs' counsel a draft scheduling information report for submission to the Court, which again stated, in pertinent part: "[B]oth defendants anticipate filing Rule 12(b)(6) motions in the very near future."[8]  (Id. ¶ 8.)

In spite of these warnings, Plaintiffs' counsel failed to check the docket for any case activity until "the beginning of the Thanksgiving holiday." (Guralnick Aff. ¶ 9.)  Counsel places primary blame on his recently-hired and inadequately trained paralegal, in whom he had vested sole responsibility for reviewing his emails during his two week absence, during which the two Motions to Dismiss were filed.  Counsel exhibited seriously questionable judgment in giving such important responsibility in connection with the recently re-activated putative class action to an untested paralegal.  See Ragguette, 691 F.3d at 328 ("[A] reasonably competent attorney would have exercised more supervision and control over a purportedly new and inexperienced subordinate.")  Even more egregious, however, was his subsequent failure to review the docket at

---

[7] Plaintiffs' counsel acknowledges that he participated in that conference call.  (See Pls. Mem. in Supp. of Reconsid. Mot. at 7 n.2 (stating that Plaintiffs' counsel "join[ed] Defendant's counsel in a conference call once the action was remanded back to this Court (before any motions were filed) in response to a notice of a court conference in this matter.")

[8] Plaintiffs' counsel states in his affidavit that, prior to his leaving town in early October, "there had been no communication between counsel with respect to an upcoming motion to dismiss."  (Guralnick Aff. ¶ 8.)  However, this statement is clearly belied by the draft scheduling information report, which was emailed to Plaintiffs' counsel on September 28, 2012.  (Exs. B and C to Coady Decl.)

any point in the five week period after he returned from Nevada, before we granted Defendants' Motions as unopposed.[9] See, e.g., Fox v. American Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004) (stating that regardless of whether attorney received e-mail notice, he "remained obligated to monitor the court's docket" (citations omitted)). We therefore find that the "reason for the delay" factor weighs strongly against any finding of excusable neglect or inadvertence.

None of the three remaining factors in the excusable neglect analysis favor Plaintiffs. With respect to the length of the delay and its effect on the proceedings, we note that Plaintiffs' responses to Bally's and LA Fitness's Motions to Dismiss were due on October 18 and October 22, respectively. (See E.D. Pa. R. Civ. P. 7.1(c) (requiring responses to motions to be filed within fourteen days of service); Fed. R. Civ. P. 5(d) (permitting three days to be added to response time after service by ECF pursuant to Fed. R. Civ. P. 5(b)(2)(e).) Plaintiff did not file his Motion for Reconsideration until December 3, 2012, approximately six weeks later. Thus, the delay caused by Plaintiff's failure to respond to the Motions to Dismiss has been significant, although not monumentally so. We therefore conclude that this factor is neutral, neither favoring nor disfavoring a finding of excusable neglect.

With respect to the danger of prejudice to the opposing parties, we find no significant prejudice to Bally and LA Fitness. We are, however, cognizant of the fact that Bally and LA Fitness have diligently defended this action, in spite of Plaintiffs' comparable inaction, and have now had to file extensive opposition briefs to Plaintiffs' Motion for Reconsideration, a burden that

---

[9] We underscore that, even prior to the filing of Defendants' Motion to Dismiss, Plaintiffs' counsel demonstrated an acute lack of attention to this case. Not only did Plaintiffs fail to respond in any way to LA Fitness's Motion for a Protective Order, or to defense counsel's communications regarding that Motion and a prior Motion for Extension of Time, but counsel also failed to timely advise the court of his change of address and filed no legal briefs in connection with the Motion to Consolidate that was pending before the MDL Panel. (See supra at 1-2 and notes 2 and 4.)

would have been unnecessary but for Plaintiffs' counsel's neglect. Under these circumstances, the "danger of prejudice" factor does not appreciably favor or disfavor a finding of excusable neglect.

Finally, with regard to bad faith, the record evidence does not support a finding of bad faith, "at least in the specific sense of engaging in outright misconduct or inequitable behavior." Ragguette, 691 F.3d at 332. We are nevertheless very disturbed by Plaintiffs' counsel's deliberate inattention to the putative class action that he initiated and over which he had stewardship. There can be no question that counsel acted with a "manifest lack of diligence." Id. He certainly was not "'so careful or vigilant as to overcome the weight' of the 'reason for the delay' factor." Id. at 333 (quoting In re Am. Classic Voyages Co., 405 F.3d 127, 134 (3d Cir. 2005)). Accordingly, this factor also does not favor or disfavor a finding of excusable neglect.

Under these circumstances, we conclude that Plaintiffs have not met their burden of establishing either inadvertence or excusable neglect that would warrant relief from our November 20, 2012 Order pursuant to Fed. R. Civ. P. 60(b)(1). Accord Anthony, 484 F. App'x at 709-10 (affirming district court's finding of no excusable neglect where delay was solely attributable to plaintiff's counsel, even though there was no prejudice to defendant, delay would not impact further proceedings and there was no evidence that plaintiff had not acted in good faith).

### 2. Rule 60(b)(6)

A party seeking relief under Rule 60(b)(6) "must demonstrate the existence of extraordinary circumstances that justify reopening the judgment." Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008) (footnote and citations omitted). Relief under Rule 60(b)(6) is "available where the party seeking relief demonstrates that 'extreme' and 'unexpected' hardship

11

will result absent such relief." Jackson v. Danberg, 656 F.3d 157, 165-66 (3d Cir. 2011) (quoting United States v. Swift & Co., 286 U.S. 106, 119 (1932)). Furthermore, the Supreme Court has held that "a party may not 'avail himself of the broad any other reason clause of 60(b)' if his motion is based on grounds specified in clause (1) – 'mistake, inadvertence, surprise or excusable neglect.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 n.11 (1988) (quoting Klaprott v. United States, 335 U.S. 601, 613 (1949). Thus, "[i]f a party is partly to blame for the delay, relief must be sought . . . under subsection (1) and the party's neglect must be excusable." Pioneer Inv. Servs., 507 U.S. at 393; see also id. ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." (citations omitted)). Here, there can be no question that fault for the delay in responding to Defendants' Motions lies entirely with Plaintiffs' counsel. Accordingly, it appears that Plaintiffs may not proceed under Fed. R. Civ. P. 60(b)(6). See, e.g. Choi v. Kim, 258 F. App'x 413, 416 (3d Cir. 2007) (concluding that district court did not err in finding that relief was not appropriate under Rule 60(b)(6) where plaintiff and plaintiff's counsel were "partly to blame for the delay and missed deadlines," and nothing else suggested "extraordinary circumstances." (citing Liljeberg, 486 U.S. at 864)).

However, even if Plaintiffs' counsel were not at fault, we find that Plaintiffs have identified no "extraordinary circumstances," which would cause "extreme and unexpected" hardship and would thus warrant relief from our November 20, 2012 Order. Jackson, 656 F.3d at 165-66 (quotation omitted). In this regard, we note that our refusal to vacate our dismissal order will not result in any meaningful hardship to Plaintiffs themselves. First, a dismissal pursuant to Local Rule 7(c) is without prejudice and, thus, is not an adjudication on the merits and has no preclusive

12

effect.  See King v. Timmoney, 263 F. Supp. 2d 977, 980 (E.D. Pa. 2003) ("Our research has disclosed no case where a motion that was granted as uncontested or unopposed was treated as equivalent to an adjudication on the merits.  In fact, courts in this district and the Third Circuit itself have consistently indicated to the contrary." (citations omitted)); Williams v. Collins, Civ. A. No. 12-1149, 2012 WL 6058299, at *2 (E.D. Pa. Dec. 5, 2012) ("A motion to dismiss granted strictly on the basis that it is uncontested . . . is not a judgment on the merits carrying res judicata effect." (citing King, 263 F. Supp. 2d at 980)).  "While it may seem inequitable that [Plaintiffs] should have [their] action dismissed despite the fact that the reasons for the dismissal appear to be solely related to [their] attorney's inexcusable negligence," there is actually little inequity where, as here, the dismissal is without prejudice.  Choi, 258 F. App'x at 416 n.3.

Second, Plaintiffs remain members of the putative class in Grabianski v. Bally Total Fitness Holding Corporation, which was filed before the instant case was commenced and which, just like the instant case, seeks relief for Bally Fitness club members who lost membership benefits when LA Fitness acquired Bally.  (See supra note 1; Coady Decl. ¶ 11.)  Indeed, neither Defendant disputes Plaintiffs' membership in the putative class in Grabianski and right to participate in that case in spite of our dismissal order.  (LA Fitness Mem. in Opp. to Pls. Mot. for Reconsid. at 8 ("Each of the named Plaintiffs in this action is a putative class member in . . . Grabianski," which "raises essentially the same claims" as this case. . . . Thus, the interests of the ten named Plaintiffs will be preserved by the existence of that prior-filed case." (quotation omitted)); Bally Mem. in Opp. to Mot. for Reconsid. at 9 ("The named Plaintiffs in this litigation are already members of classes in other cases alleging the same claims [citing, specifically, Grabianski and Piegaro v. Bally Total Fitness Holding Corp., No. 3:12-4595 (D.N.J.)].  As such,

they will not be prejudiced by allowing this Court's dismissal order to stand.").

We therefore conclude that Plaintiffs have established no "extraordinary circumstances" that would warrant relief from our November 20, 2012 dismissal order pursuant to Fed. R. Civ. P. 60(b)(6).

## IV.   CONCLUSION

For the foregoing reasons, we deny Plaintiffs' Motion for Reconsideration. Given our denial of that Motion, we also deny Plaintiffs' accompanying request that we permit them to file responses to Defendants' Motion to Dismiss *nunc pro tunc*. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.